No. 32.—GEORGE FIELD and others, plaintiffs in error, *vs.* SEABORN JONES and JOHN SCHLEY, defendants.

[1.] The Southern Life Insurance and Trust Company, having claims upon different persons, took certain lots in the City of Columbus in payment, and the titles therefor were made to one Field, he paying no consideration: *Held*, that the property is subject to levy and sale by executions against the company, and that the plaintiffs in execution cannot go into Equity to subject the same, they having an adequate remedy at Law.

[2.] Plaintiffs in execution cannot go into Equity to subject debts due to the defendant in execution, until they have tried the remedy by garnishment, and found that inadequate.

In Equity, in Muscogee Superior Court. Decision by Judge IVERSON, May Term, 1851.

Seaborn Jones and John Schley filed a bill in Muscogee Superior Court, charging as follows :

" That the Southern Life Insurance and Trust Company of the State (then Territory) of Florida, at the April Term, 1843, of the Superior Court of said County, foreclosed a mortgage on the interest of Lucia A. Bowdre on two lots of land in the City of Columbus, Nos. 55 and 56, being one-half thereof, which lots were afterwards sold under the mortgage *fi. fa.* and purchased by the said Life Insurance and Trust Company; that by an order of the said Court, the purchase money was credited on the *fi. fa.* and titles directed to be made to the said company; that George Field, who had been the cashier or secretary of the said company, and was then acting as president of the same, in the year 1843, procured the Sheriff to execute titles to him individually, without any consideration being paid by him; that a large number of negroes were also included in the said mortgage, and in consideration of the company agreeing to release their claim on the negroes, William P. McKeen executed titles to lot No. 93, to George Field individually, he paying nothing therefor out of his own funds; that the Life Insurance and Trust Company held claims against the Farmers' Bank of Chattahoochee or James S. Calhoun, the president thereof; that in payment of these claims, Calhoun agreed to convey to said company one-half of the said lots, Nos. 55 and 56; that the titles to the same were made to said George Field individually, without any consideration being paid by him, and on no other consideration than the one above stated; that Moody and Terry being indebted to the said Life Insurance and Trust Company for a large amount, agreed, in consideration of being released from their said indebtedness, to convey the south part of lot No. 48, in said city, to the said company; that the titles to said lot were made to the said George Field individually, without any consideration being paid by him out of his own funds. The bill showed that complainants were judgment creditors of the Southern Life Insurance and Trust Company, to a considerable amount; that they had caused their executions to be levied on the said lots, Nos. 55, 56, 93 and 48, the sale of which had been stopped by the interposition of a claim to each by the said George Field.

The bill prayed an injunction of the claims, and that Field be

decreed to make conveyances of the property specified, to the Life Insurance and Trust Company.

By an amendment to the bill, it was charged, that the claims of complainants, and another judgment of equal date with their own, belonging to another creditor, amount to $9,000 ; that Field and the Life Insurance and Trust Company are both non-residents of this State; that the property levied on is insufficient to pay the above claims, and there is no other property in this State which could be reached by these *fi. fas.;* that the Life Insurance and Trust Company owned certain choses in action, which were in the possession of Philip T. Schley, Esq. of said City, being chiefly promissory notes, given for the rent of the said property; that if these notes were in the name of Field, as payee, they were really the property of the company. The amended bill prayed to enjoin Philip T. Schley from paying over the amounts collected, or collecting the amounts due on said notes; and also, for an account between Field and the Life Insurance and Trust Company.

By consent, (and without prejudice to the parties,) Philip T. Schley was appointed receiver to collect the choses in action in his hands, and to receive the rents, issues and profits of the lots in dispute, *pendente lite.*

George Field filed his separate answer, stating as follows:

" That he was cashier of the Southern Life Insurance and Trust Company, from its organization until about the year 1839, when he was elected president, and continued president until December, 1845; that in the general suspension of specie payments in 1837, the defendant, in order to sustain the credit of the company, became individually responsible for money borrowed for the use of the company, to the amount of $25,000. In the spring and summer of 1838, it became necessary for the defendant, and he did largely increase his individual liability for money borrowed for the use of the company; that these were at short times, and the exact amount he could not state, but at no time were less than $25,000. In 1839, the individual liability of defendant continued to be at least as large. In 1840, it was largely increased, as set forth specially in the answer, so that in

Field *et al. vs.* Jones and another.

December, 1840, his individual liability for the company amount-
ed to at least $200,000. In 1841, the company having sus-
pended specie payment, the defendant was forced to borrow
money on his own account, and pay off some of the liabilities
incurred by him for the company. On the 30th October, 1841,
the balance due him for money so paid, above the amounts re-
ceived by him, was $54,536 32. On 31st December, 1842, the
balance thus due him was $43,536 58. On 17th April, 1843,
$41,840 75. Of the debts of the company, for which defend-
ant is personally liable, there is still due and unpaid about
$37,000, and of the amount paid by the defendant for the com-
pany, there was, at the time of filing the answer, still due the
defendant not less than $25,000. In the year 1839, the extent
of defendant's liability for the company being so large, he re-
ceived, in July, the conveyance from the Farmers' Bank of Chat-
tahoochee to the undivided half of lots Nos. 55 and 56. He
denied that it was taken in fraud of the company or its creditors,
but as a security against the responsibilities he had incurred.
In the same way and for the same purposes, he took the convey-
ance to lot No. 93, as set forth in the bill ; that the fact that the
conveyances were taken to defendant personally, was soon
thereafter communicated to the company, and by them acquiesc-
ed in. The other conveyances mentioned in the bill, were ta-
ken under the same circumstances, and for the same purpose.
The answer denied that the lots belonged to the company, but,
on the contrary, asserted that they belonged to defendant. Far-
ther, that on 31st March, 1841, the company assigned the debt
of Moody and Terry to N. C. Robbins, in trust for the indemnity
of defendant, and that by the consent of the assignee and the
company, the conveyance from Terry was taken to defendant;
that 21st April, 1842, the debt of L. A. Bowdre was assigned to
trustees for the indemnity of defendant, and that by the consent
of the assignees and company, the conveyance by the Sheriff
to half of lots Nos. 55 and 56, as stated in the bill ; and that
the agreements made with McKeen and Bowdre were drawn by
John Schley, the complainant, (before he purchased the judg-
ments against the company,) as the professional adviser of the

Field *et al. vs.* Jones and another.

defendant. The answer denied that the property was insufficient to pay the debts, if found subject, without the rents, issues and profits. The answer also denied that defendant had control of sufficient assets of the Life Insurance and Trust Company to pay himself, without the property here in dispute."

To the bill as amended, the defendant demurred for want of equity. Upon hearing the demurrer, it was overruled by the Court, and this is the first error assigned.

Defendant's counsel then moved the Court, (the answer being in,) to dispose of the injunction, and discharge the order appointing Philip T. Schley receiver, &c. The Court refused the motion, and this is the other error assigned.

JAS. JOHNSON and W. DOUGHERTY, for plaintiffs in error.

BENNING, for defendants in error.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The pleadings in this case are formidable for voluminousness. It is not necessary to trace the progress of the cause. The question is made upon demurrer to the amended bill. We do not doubt the right of the defendant to demur after the filing of the amendment. It was a *material* amendment, and when that is the case, it is competent to demur to the whole bill, even after the answer is in and replication filed. See *Boothe & Raines vs. Stamper*, decided at the last July Term at Americus. This demurrer denies generally that complainants are entitled to discovery and relief on the case made. We find that the matter in controversy is, whether they have not an adequate remedy at Common Law. The case, disencumbered of lumber, is this: The plaintiffs in error are judgment creditors of the Southern Insurance and Trust Company, a corporation located in *Florida*. They file their bill and charge, that that corporation having claims in this State upon divers persons, settled them by receiving in payment certain lots in the City of Columbus. The property so taken, is particularly described; and that the titles to

the same, instead of being executed to the company, were made to one George Field, he paying nothing therefor. ·They charge farther, that their executions have been levied upon the property, and that it has been claimed by Field, and that the claim is now pending. Also, that there are debts due to the company for the rent of the property, and on other accounts, in the hands of Mr. Schley, all of which, with the names of the debtors, are particularly set forth. By consent of parties, Mr. Schley was appointed receiver, to take charge of and collect the debts and rent the property. The answer of Field came in before the amendment to the bill. The demurrer has nothing to do with that. The· prayer of the bill is, that Field be enjoined from prosecuting his claim to the property, and collecting the rents therefor; that his titles be set aside, and titles be executed to the Southern Insurance and Trust Company, and the property be decreed to be sold, and the proceeds and debts due to the company be paid to the executions of the complainants, and other executions against the company, according to their liens and priorities. This *is* the case. Upon such a state of facts, we do not doubt but the remedy of these plaintiffs in execution is quite sufficient at Law. So thinking, even if Equity had concurrent jurisdiction, a Court of Law, being already in the exercise of jurisdiction, we are constrained to sustain the demurrer. It is, in my view, highly expedient to adhere to those ancient landmarks which define the boundaries between Common Law and Equity jurisdiction. So far as the property is concerned, conveyed to Field, the case is the same in principle with *Pitts and Bullard.* · The price was paid by the company, and the titles were made to Field. Field is a naked trustee of the legal title. 3 *Kelly*, 5. The company has an estate in it, which is subject to levy and sale.

What is to prevent the plaintiffs in execution from proceeding, as they have begun, at Law? The bill gives no reason whatever. No fraud is charged. That is, fraud was charged, and the complainants amended their bill, and struck out the allegations as to fraud. The question of title can be as well tried in a Court of Law as a Court of Equity. Indeed, that is the appropriate tribunal for the trial of titles. The property, if condemn-

ed, would be as fairly brought into market, as if ordered to be sold under a decree in Chancery.   A formal annulling of Field's deed, and the execution of deeds to the company, is unnecessary.   If the property is made subject, by a judgment at Law, upon the trial of the claim, it cannot be questioned but that the purchaser at the sale would get a good title.   Both Field and his feoffees would be estopped by that judgment.   This bill does not make a case even for discovery, for it does not charge that, for want of evidence, it is necessary to sift the conscience of the complainant or of Field.

[2.] So far as the debts due to the company are concerned, in the hands of Mr. Schley or others, the plaintiffs in execution have a remedy provided by Statute to reach them.   The process of garnishment is at their command.   We have decided at Talbotton, some terms ago, that a plaintiff in execution cannot go into Equity, to subject debts due to the defendant in execution, until he has tried his remedy by garnishment, and found that inadequate.   I cannot, at this moment, refer to the case.   We hold the same doctrine now.   Sustaining this demurrer to the bill, the appointment of receiver and the injunction fall, as a matter of course, for the bill is out of Court.

Let the judgment be reversed.