McCay, Judge.
We think the Judge carried the doctrine of the estoppel of a tenant entirely too far, and especially did he err in rejecting the evidence. Whether one is estopped — that-is, whether such facts exist as estop a party, (unless that estoppel be by matter of record) it is for the jury to decide, and not the Judge. The Judge must tell the jury what the law is, and the jury under the evidence decides the result. Is the Judge, as soon as some evidence is offered showing that the defendant is the tenant of the plaintiff, to weigh that evidence, decide that he is tenant, and stop all his other evidence until the supposed tenant has satisfied him that he is not tenant?
This is an usurpation by the Court of the rights and duties of the jury, and is contrary to section 3183 of the Code.; often the whole case turns on the simple question of whether the defendant got possession as tenant of the plaintiff. If he did, the general rule of law undoubtedly is that he cannot set up any title inconsistent with the relation then existing between them. If under the proof the jury are satisfied that the defendant did so go into possession, they should under the law as given them in charge, hold the defendant estopped and give no heed to that part of the evidence which sets up the want of fealty due from a tenant to a landlord. But the Judge erred in holding that the evidence offered in this case came within the rule at all. The foundation of *128 the doctrine is, that a man shall not get possession of land. as the tenant, or *under a bargain with another, and having thus got the advantage, stultify his own act and set up that at the time the title was not in the person from whom he received it. And this applies to regular tenants who hold at will or for years, and to purchasers, who at the time take no title, but leave it with the vendor as security for the payment of the purchase money. But this rule has never been extended to cover a case where the tenant afterwards buys and gets title from the landlord or where the landlord’s title ceases, as if it be a life estate, and he dies, or where he sells to a third person or where the title is sold at sheriff’s sale or the landlord ceases in any way to be the owner of the land. Indeed, the principle would never seem to come into operation, except when the tenant undertakes to set up a title inconsistent with the idea that at the time he took the possession, the landlord had the title which was recognized between them.
These propositions are established by the following cases: Logan vs. Steel’s heirs, 7 Monroe, (Kentucky) 104; Casey vs. Gregory, 13 B. Monroe, 508; Swann vs. Wilson, 1 A. K. Marshall, 99; Jackson vs. Howland, .6 Wendell, 666; Nellers vs. Lathrop, 22 Wendell, ■ 121; Taylor L. & Ten., section 707, 4 Durnford & East; 1 Woodbury & Minot, 61. The subjectds also fully treated in American Law Review, October, 1871, 23, 34.
The only question that can arise in this case, is whether if a third person has got the title of the landlord against his consent, as by a sheriff’s or marshal’s sale, the tenant can attorn to that third person, and on suit by his original landlord, set up this title. We think the authorities are that he may. The purchaser is a privy of the landlord. He buys at the legal sale all the rights the landlord had. Under our law, he could turn the tenant out summarily by the sheriff, since the sheriff is authorized to turn out the defendant, his heirs their tenants, etc. Is the tenant to submit to be turned out? May he not make his peace? Is he not in good faith, as a law abiding citizen, bound to do what the law orders and directs him to do, or must he wait until the officer comes with *his staff and forcibly puts him out? He must act in good faith, and of this the jury and not the Court are to judge from the evidence. See the cases of Foster vs. Morris, 3 A. K. Marshall, 611; Lunsford vs. Turner, 5 J. J. Marshall, 105. See also the case of Swann vs. Wilson, 1 A. K. Marshall, 99. On this as on other questions of real property, the Kentucky reports abound in illustrations and decisions. See, also, Harbin vs. Roberts, 33 Georgia, 48. It is pushing the doctrine of the sacredness of the rights of a landlord very far to say that if the land be sold as his, and the tenant, instead of resisting the sheriff, makes terms with the purchaser perhaps, to save his family from exposure to storm and cold, he is to be treated as a traitor to that fealty every tenant owes to his landlord. It is absurd to say that the -landlord may recover against the tenant, backed as he is by the purchaser, and as soon as the recovery is *129 had, the purchaser may come with the sheriff and formally put the landlord out and the tenant in. We think the tenant may show that he has attorned to the purchaser at the marshal’s sale, and set up that title even if Smith be no actual party. But under our law we think the real owner has a right to be made a party, and to take the place of his tenant. It is nothing but his duty to> his tenant, and it is his right for his own protection, since the tenant may care but little whether he is ousted or not, as his term may be nearly out.
We reverse the judgment, because the Court had no right himself to determine whether the defendant was tenant, and because we think the defendant, even if he was tenant when he went in, or purchased and took a bond, thus recognizing the plaintiff’s intestate’s title, and going in under it, can yet show that the land has been legally sold as the property of the vendor, since the date of his purchase, and that he has in good faith attorned to the purchaser at the marshal’s or sheriff’s sale.
Judgment reversed.