## CLAYTON & WEBB *vs*. MAY.

1. When the judge of the superior court amends a bill of exceptions, or causes it to be done, by striking out portions of it, some allusion should be made to such amendment in his official certificate, so that this court may know that parts of it have been obliterated by his direction ; the better practice, however, as well as the more legal course, is to decline to sign and certify it at all until re-written so as to present an intelligible and unmutilated bill of exceptions and assignment of errors for review here.

2. Where, by direction of this court, the clerk of the superior court transmits a certified copy of the bill of exceptions from the official copy retained in his office, and it conforms in all respects to the original in this court, with the parts so stricken omitted, we will presume that the portions stricken from the original were stricken by order of the judge.

3. In his abstract and brief, counsel for plaintiff in error has no right to base any position of fact or argument upon any part of the bill of exceptions so stricken; and if it be done, such positions will be wholly disregarded because their foundation crumbles for want of the certificate of the judge ; especially when the transcript of the record fully accords with the action of the judge in striking those portions of the bill of exceptions—such portions referring to written demurrers of record.

4. Where defendant demurred to the second ground of amended illegality, which was as follows : "There is no judgment to support the execution, it does not follow the judgment," and excepted to the ruling of the court and assigned error thereon, and where all objection to the said ground of illegality because it was an amended ground without swearing that defendant did not know of that ground when the original affidavit was filed, was stricken from the bill of exceptions, and no such objection appears anywhere of record, the exception and assignment of error will be confined to the point that the execution does not follow, and is not supported by the judgment.

5. Where the judgment is against a partnership and the execution is against, not only the partnership but the individual members thereof, not as members of it but as distinct persons, the variance is fatal.

Practice in Supreme Court. Practice in Superior Court. Judgments. Executions. Illegality. Before Judge WIL-LIS. Muscogee Superior Court. May Term, 1881.

v 68—3

Clayton & Webb obtained a judgment against T. D. May & Co., a firm composed of May and J. W. Clayton. To the levy thereunder May filed his affidavit of illegality. Subsequently he amended it by adding new grounds, one of which was that the execution did not follow the judgment. (The *fi. fa.* was against T. D. May, J. W. Clayton and T. D. May & Co.) The case went to the superior court by appeal. The court sustained the illegality on the above stated ground alone, and quashed the *fi. fa.* Plaintiffs excepted.

For the other facts see the decision.

S. B. HATCHER, for plaintiffs in error.

J. M. RUSSELL, by S. W. GOODE, for defendant.

JACKSON, Chief Justice.

1. When we examined the bill of exceptions in this case, it was discovered that the abstract of plaintiffs in error did not accord with it. The point made in the abstract and brief and argument was that the illegality had been amended without the requisite affidavit that affiant did not know of the ground taken by the amendment when the original affidavit of illegality was made. All allusion to that point was stricken out of the bill of exceptions by having black lines drawn across that portion of the bill of exceptions which referred to it, and we could not ascertain from the certificate of the judge, or any other part of the bill of exceptions, who struck that part or by whose order it was done.

It is the duty of the judge, when he certifies the bill of exceptions, to see to it that a plain and unobliterated bill of exceptions, distinctly assigning the errors complained of, and containing the facts necessary to enable this court to adjudicate the cause, be made out ; and if it be untruthful to decline to certify, with his reasons therefor, as provided for in section 4257 of the Code. It seems to us

that this is the legal course. If, however, he sees fit to obliterate any part of it, he ought certainly to write somewhere on the bill of exceptions that he did it, or ordered it done, so as to assure this court that nothing improper has been done by any unauthorized person; that nobody has changed the bill of exceptions since it left his hands. Otherwise this court will be involved in doubt about it. The more legal course, and the better practice, would be, if anything be in the bill of exceptions not consistent with what transpired before the court on the trial, to require the bill of exceptions re-written so as to present a clean and unmutilated record for inspection here and preservation on the files of this court of record.

2. In this case we were obliged to send to the clerk of the superior court of Muscogee county for a copy of the official copy, reserved in his office, duly certified by him. We find that this certified copy is the same as the original here, with the obliterated parts left out. It is presumed, therefore, that the judge himself made that obliteration or ordered it to be done, and that no unlawful hand has interfered with the bill of exceptions as it came from the judge. So presuming, we take no further action upon it than this allusion to and remark about it.

3. But, surely, counsel acted very indiscreetly in making his abstract conform not to the bill of exceptions as stricken and modified by the judge, but as written by himself originally before so altered. From a correspondence with the clerk of this court with him by our direction, we are satisfied, however, that it was an indiscretion by him and nothing more; and, therefore, we forbear to press investigation further. From that correspondence, it seems that he thought the bill of exceptions was left in legal effect as it stood before it was so obliterated in part. We must, however, disregard entirely any point made by him on the obliterated part of the bill of exceptions, and consider only the case made by the bill as amended; especially as the amendment of the judge, in striking part of it, accords with the transcript

of the record.   The amendment strikes out all allusion, as ground of demurrer to the second amended affidavit of illegality, to the absence of an affidavit that the ground was not known when the original affidavit of illegality was taken, and confines the ground to the single point that the judgment did not authorize the execution ; that the execution did not follow it.   And the transcript of the record shows that this point alone was in the demurrer.

4. We must, therefore, decline to consider at all the point that the defendant in *fi. fa.* did not swear that he did not know his amended ground when he took his first affidavit of illegality, because that point was not made before the court below, and this court can only reverse it on its ruling.   The point may have been waived in the court below ; the amendment may have been allowed by consent; it may have been done in the justice court, as it was on an appeal to the superior court.   It is enough that the point was not made.   The judge does not certify it, and the transcript of the record does not show it.

Besides, if it had been made, the defendant could then have sworn that he did not know it when he took the original affidavit, and why should he not then have been permitted to show by oath that he did not know it?

There might have been some trouble to do so in this case, as the ground of the amendment is that the execution did not follow the judgment, which ground was apparent all the while on the face of the papers ; but we must be governed by general rules applicable to all cases, and it will not do *to reverse* the court on a point not made before it, and which, if made in ordinary cases at least, if not in all cases, could be cured by amendment.

5. The sole question, therefore, for us is, does the execution follow the judgment, or, in other words, does the judgment authorize the execution ?   The answer to this question depends on the answer to another:   Is the variance between the two material?

The judgment is against a firm—a partnership. The execution is against not only the partnership, but individuals. Doubtless they are the individuals who compose the firm ; but the execution is against them, not as persons who compose the firm, but as individuals—persons distinct from the same persons as members of a firm. We think that this variance is material. It is true that when partners are served personally, as these were, the execution may be levied on the private property of those served. Code §3351 ; but this is quite a different thing from issuing the execution against them individually when the judgment is against them as partners.

When partnerships assets and individual assets come to be applied to judgments against partners and those against individuals who are members of the partnership, the importance and materiality of the variance become apparent. Sections 1918 and 3154 of our Code provide how the partnership and individual assets shall be applied to creditors of the partnership and of the individual members of the firm. Partnership debts, when joint assets are exhausted, may go upon individual assets ; but the individual debts, without regard to dignity as compared with the joint debts, must first be advanced the *pro rata* amount received on joint debts from joint assets. In this case the judgment is a debt of record against the partnership. It is a joint debt. The execution is a process to enforce, not only this joint debt of the partnership, but an individual debt of each of them. The first is a joint debt—the latter is not only a joint but an individual debt. The variance is wide. It is as material as wide, and therefore fatal.

Judgment affirmed.