McCall *vs.* Walter.

## McCall *vs.* Walter.

1. Where a mortgage was given on "all that certain stock of goods consisting of dry goods, groceries, boots, shoes, hats, caps, hardware, notions, and all such other articles as are usually kept in a first class country store, and all fixtures and utensils in said store belonging to the mortgagor," such mortgage covered an iron safe, show-cases, platform scales, a truck, the copying-press, chandeliers, and a cheese case, in such store, and those articles were properly sold under the *fi. fa.*

(*a.*) The distinction between permanent and movable fixtures discussed.

2. A mortgage provided that, in case of foreclosure or suit on the notes, the mortgagor would pay all attorney's fees and commissions, not less than ten per cent on the amount for which such foreclosure might be had, and all costs and expenses incurred, and that such fees and expenses should be considered as part of the debt for which the mortgage was given, and be as amply secured thereby as the debt thereinbefore set forth :

*Held,* that by the terms of this contract, the fees were as much a part of the debt secured as were the notes themselves.

(*a.*) The court was right in awarding ten per cent to the plaintiff's attorney as fees in the foreclosure.

(*b.*) The case in 49 *Ga*, 604, differs from this. The contract there was for a factor's lien, which was expressly confined by statute to provisions and commercial manure.

3. Where no objection was made at the hearing to the allowance of certain attorney's fees, but it was acquiesced in, the point cannot be for the first time raised by assignment of error in the bill of exceptions.

(*a.*) Where a rule was brought against a sheriff, not to enforce the performance of an official duty which he had omitted, he not being in default, but as a stakeholder, the sole purpose being to settle the claim of the contending parties to priority of payment out of the fund in his hands which he was required to hold up until this question could be settled by the judgment of the court, he is in the condition of a party who is required to file a bill of interpleader, or a trustee *quoad hoc* who is entitled to counsel; and *semble* that the sheriff in this case was entitled to counsel, at the expense of the parties litigant.

4. The practice of correcting bills of exceptions in important particulars, by notes appended to the writ of error, is directly in the face of the law providing how omissions shall be supplied and incorrect statements in bills of exceptions rectified. Such corrections should appear in the bill of exceptions, and nowhere else; if they appear elsewhere, they will not be noticed by this court, and will be treated

as no part of the bill of exceptions.   In all cases hereafter certified, this court will hold parties to a strict compliance with the require· ments of the Code in this respect.

September 18, 1883.

Mortgage.   Contracts.   Attorney and Client.   Prac- tice in Supreme Court.   Sheriff.   Before Judge HANSELL. Brooks Superior Court.   May Term, 1883.

Walter brought a rule against the sheriff to distribute a fund in his hands.   The sheriff answered that there were various claimants of the fund, and these were set out in the answer; he stated the costs incurred, and prayed that the various contestants be made parties and their rights determined, and that he should be discharged " with his costs and expenses."   Several levies had been made on the property before sale, but by agreement the property was sold, and the fund brought into court for distribution. The amounts brought by the different articles were set out in detail.

The only two claims necessary to state were those of Walter and McCall.   Walter had a mortgage dated Octo- ber 6, 1882, covering

"All that certain stock of goods consisting of dry goods, groceries, boots, shoes, hats, caps, hardware, notions, and all such other arti- cles as are usually kept in a first class country store, in the brick store-house of W. C. McCall, in Quitman, of said county of Brooks, and state of Georgia, and all fixtures and utensils in said store be- longing to the said Davidson; and also all the notes, accounts, de- mands, books of account, etc., of the said George W. Davidson."

The mortgage contained the following covenant:

"In the event of the foreclosure of this mortgage for said debt, or any part thereof, or suit upon said notes, or either of them, he (the mortgagor) will pay all attorney's fees and commissions, not less than ten per cent on the amount for which said foreclosure may be had, and all costs and expenses incurred by reason of such foreclos- ure or suit; and that such fees and expenses shall be considered as a part of the debt for which this mortgage is given, and be as amply secured thereby as the debt hereinbefore set forth."

This was foreclosed and levied January 12, 1883.   Sub-

sequently McCall sued out a distress warrant, and it also was levied.

The court decided that the fund should be distributed as follows:

(1.) Costs and expenses should be paid, and $20.00 should be paid to the sheriff's attorney as a fee.

(2.) The mortgage should be paid, and the balance (if any) be paid to the holder of the distress warrant.

McCall excepted. For the other facts, see the decision.

D. L. GAULDEN; W. C. McCALL, by brief, for plaintiff in error.

S. T. KINGSBERRY, for defendant.

HALL, Justice.

The mortgage from Davidson to Walter conveys to the latter, as security for his claim, "all that certain stock of goods, consisting of dry-goods, groceries, boots, shoes, hats, caps, hardware, notions, and all such other articles as are usually kept in a first-class country store, and all fixtures and utensils in said store belonging to the mortgagor." When the mortgage was foreclosed and the property mortgaged was brought to sale under a *fi. fa.* upon the judgment of foreclosure, among other things thus sold were an iron safe, the show-cases, platform scales, the trucks, copying press, chandeliers, and a cheese case, which were in use in the store at the execution of the mortgage.

1. In a contest between creditors for the fund, the court held that these last-named articles were covered by the mortgage, and were properly sold under the *fi. fa.*, and on this decision error is assigned. Machinery not actually attached to the realty, and movable at pleasure, is not, in the strict sense of that term, a fixture. Code, §2219. Anything detached from the realty becomes personalty instantly on being so detached, and may be the subject

matter of larceny, even by the person so detaching it. *Ib.*, §2220. A tenant cannot remove permanent fixtures. *Ib.*, §2281. The distinction between permanent and movable fixtures is here recognized, and this is no departure from, or change in, the common law. Thus, chattels real are considered as personal property in every respect, if not so annexed and necessarily attached to the freehold as to go along with it in the same path of alienation. " In order to make a thing part of the realty by merely annexing, it is necessary that both the thing and the soil to which it is attached should belong to the same owner." Herman on Chattel Mort., §9. " Movable fixtures are so completely considered the personal property of the tenant that, when not exempt, they may be stripped from the house and sold on process against him as goods and chattels. Among other instances given of such movable fixtures, are a bark-mill, a cider-mill and press, a post wind-mill, coffee-mills, gas fixtures, chandeliers, side brackets, iron safes, cupboards, shelves, and quite a number of other like articles, are covered by the description of utensils of the trade, and a portion by fixtures and utensils.'" *Ib.*, §10. The mortgagor in this case was occupying rented premises, and in this house the goods mortgaged were located, and were so described. Personalty, by our Code, §2237, includes " all such property as is movable in its nature; in fact, everything having a value inherent in itself, or the representative of value, and not included in the definition of realty." If these positions are sound, it follows that the decision of the court below on this question was correct.

2. The mortgagor covenanted in and by his deed with the mortgagee that, in the event of the foreclosure of the mortgage for the debt it was given to secure, or any part thereof, or of suit upon the notes, or either of them, embraced therein, he would pay all attorneys' fees and commissions, not less than ten per cent on the amount for which such foreclosure might be had, and all costs and expenses incurred by reason of such foreclosure or suit,

and that such fees, costs and expenses should be considered as part of the debt for which the mortgage was given, and be as amply secured thereby as the debt thereinbefore set forth. Under this covenant the judge awarded the plaintiff's attorney, as fees on the foreclosure, out of the money brought into court by sale under the mortgage *fi. fa.*, ten per cent on the amount of the notes the mortgage was made to secure; and this allowance is also assigned as error. The foreclosure of the mortgage was for the principal and interest of the notes, together with the sum of one hundred and sixty-five dollars and thirty-nine cents for attorney's fees due on the foreclosure of the same. By the terms of this contract, the fees were as much a part of the debt secured as were the notes themselves, so that the judgment of foreclosure and the execution issuing thereon was only for " the amount of principal and interest due on the mortgage," and was in strict accordance with the law prescribing how foreclosures on mortgages of personalty should be made. Code, §3971. *Rodgers vs. Bullard*, 49 *Ga.*, 604, relied upon by counsel for plaintiff in error, is not applicable to this case, because it formed a part of the contract for a factor's lien, which, by the terms of the statute authorizing it, was confined to " provisions and commercial manures." The law applicable to the present case contains no such restriction.

3. It is next objected that the allowance of twenty dollars as fees to the counsel of the sheriff was unauthorized. This allowance does not seem to have been objected to at the hearing, but to have been acquiesced in; there is therefore no foundation for the error alleged in the bill of exceptions upon the question. Besides, the only party to the rule whose interest was affected, the plaintiff in the mortgage *fi. fa.*, makes no complaint. After paying court cost, discharging the lien of his attorney, and the expenses of the sale, there was not enough left to satisfy his claim, which, by the judgment upon the rule against the sheriff, was to be first paid. But apart from these considerations,

we are inclined to the opinion that the sheriff, under the circumstances of this case, was entitled to counsel at the expense of the parties litigant. The rule was not brought to enforce the performance of an official duty which he had omitted; he was not in default, was merely a stakeholder; the sole purpose of the proceeding was to settle the claims of the contending parties to priority of payment out of the fund in his hands, which he was required to hold up until this question could be settled by the judgment of the court. He is in the condition of a party who is required to file a bill, calling on contesting claimants to interplead; he is a trustee *quoad hoc*, and, like other trustees is entitled to counsel. Code, §2543 and cases there cited. Of course he must act in the utmost good faith, to entitle him to this assistance.

4. We notice in this, as in very many cases that come before this court that the bill of exceptions is corrected in important particulars by notes appended to the writ of error. This practice is directly in the face of the law providing how omissions shall be supplied and incorrect statements in bills of exceptions shall be rectified. Code, §4257. Such corrections should appear in the bill of exceptions and nowhere else. If they appear elsewhere, they will not be noticed by this court and will be treated as no part of the bill of exceptions. The practice may lead to unauthorized tampering with the record by others; it is loose, to say the least of it, and may, as we have intimated, be unsafe. It is true that in *Wing vs. Tompkins*, 60 *Ga.*, 447, Warner, C. J., delivering the opinion of the court, said: " The judge may sign and certify a bill of exceptions with an explanatory note thereto, but he is not compelled to do so when it does not state the truth and the whole truth as to all the material facts which occurred on the trial of the case." But he adds: "The better practice is to require that the bill of exceptions should state all the material facts correctly before the judge certifies to the truth of the same, and then there will be no necessity for any explan-

ation." See, to similar effect, *Clayton & Webb vs. May,* 68 *Ga.,* 27; 59 *Ib.,* 235; 67 *Ib.,* 764, 769.

We insist upon this better practice; and in all cases hereafter certified, shall hold parties to a strict compliance with the requirements of the Code in this respect.

Judgment affirmed.