COTTLE *et ux.* vs. HARROLD, JOHNSON & COMPANY.

[Blandford, Justice, being disqualified, Judge Branham, of the Rome circuit, was appointed to preside in his stead.]

1. Where the objection to the jurisdiction of the chancellor of a different circuit from that in which a case was pending to hear an injunction was not urged, but the chancellor certifies that he understood the hearing of the case by him to be acquiesced in by counsel, the question not having been decided by the court below, is not the subject-matter of review here.

(*a.*) This case differs from that in 67 *Ga.*, 246, in that the record and bill of exceptions together show that the judge of the circuit was disqualified.

2. Equity will restrain a trespass when the threatened injury is irreparable in damages, or when the trespasser is insolvent, or when there exist other circumstances, which, in the discretion of the court, render the interposition of the writ necessary and proper; among which is the avoidance of circuity and multiplicity of actions.

3. Where land was bought for a firm, paid for with the money of the firm, and the title conveyed to two of the members for the firm; an implied trust arose in favor of such firm, the members were the equitable owners and tenants in common, and could mortgage the land.

4. Under such facts, where there were five partners, four of whom gave a mortgage on property thus equitably owned by the firm, and where the mortgage was foreclosed and the land sold, if the proceedings were all regular, the sale operated to convey the interest of all the partners who joined in the mortgage, but did not pass title to the interest of the member who did not so join in it.

(*a.*) The lien of the mortgage antedated the deed from the two members of the firm to the defendant in this case.

5. A *fi. fa.* which has been levied, but under which no sale has been made, does not alter the title to land.

6. If, upon the dissolution of a firm, one member took certain lands

and agreed to pay a mortgage debt thereon, but failed and refused to do so, and conveyed the land to another person without consideration, to shield himself from the payment of this and other debts assumed by him, and the grantee gave bond for titles to still another person for this purpose, and it was so received by him, these conveyances would be void.

7. The mortgage *fi. fa.* having issued against the firm, though one of the members did not join in the mortgage, and the land having been sold and conveyed as the property of the firm, and the complainants in the present bill claiming a prescriptive title, while defendant claims to be a *bona fide* purchaser for value, and denies the possession of complainants, there was no error in granting an injunction until all these questions could be determined by the jury.

8. The sale of the land under the Armstrong *fi. fa.* did not convey more than the equity of redemption. The mortgage was a prior lien thereon, and no irregularity in relation to it is shown.

9. The fact that the defendant had made a deed to the land to one of the complainants would not prevent an injunction. The complainants all suing for the use of the firm, title might be shown in them or either of them. If the deed was defendant's, it concluded her ; if not, it would not affect her.

10. The judge may always correct a bill of exceptions in the body thereof, so as to make it conform to the truth, if he chooses to do so. It would be better not to interline the bill of exceptions, but to make the corrections on the margin, or on a separate piece of paper, and attach it before certifying. No alteration by the judge, certified to have been made by him, will cause a dismissal of the case, nor will an immaterial erasure or interlineation by counsel do so. Material interlineations, additions or erasures, not made by the judge or certified to have been made before the bill of exceptions was certified, will authorize this court to dismiss the case.

(*a.*) This court would not grant a *mandamus* absolute against a judge who should refuse to certify an illegible, disorderly, erased or interlined bill of exceptions.

(*b.*) The careful preparation of abstracts urged.

April 25, 1884.

Title. Liens. Partnership. Injunction. Trespass. Equity. Trusts. Tenants in Common. Practice in Supreme Court. Before Judge CLARKE. Sumter County. At Chambers. January 9, 1884.

Reported in the decision.

B. B. HINTON; C. ANDERSON, for plaintiffs in error.

HAWKINS & HAWKINS, for defendants.

BRANHAM, Judge.

Thos. Harrold, Uriah B. Harrold and Henry R. John-son, partners, composing the firm of Harrold, Johnson & Company, filed their bill in Sumter superior court against Obadiah Cottle and his wife, Eldora V. Cottle, claiming title to land lots numbers 160, 161, 162, parts of lots 138 and 158, in the 26th district of Sumter county, containing 1,000 acres, and known as the Joseph Brown plantation, alleging that Albertus L. Beckwith was in possession of the land as their tenant, and that the defendants, in De-cember, 1883, in the night, under some pretended but fraudulent claim, seeking to get possession of the land, moved into a one-room out-house in an oat-field, remote from the dwelling, and now claim to be in possession of the land, are taking water from the fish pond, cutting wood from the place, and are threatening to interfere with the tenants, to dispossess them, and will likely so interfere with them that they will be unable to keep them on the farm, and that the defendants are insolvent; and they therefore pray that they be enjoined from using water and wood on the place, from injuring the crops, from interfer-ing with their possession and with their tenants in any way.

The defendant O. J. Cottle claimed no title to the land, but alleged that the title was in his wife, Eldora V. Cottle. She claims that she bought the land, in 1871, from Aaron T. Hart and Isaac Hart; that they then made her a deed to it, and that she then went into possession and sold it to Hansel Beckwith, in 1873, for 160 bales of cotton, gave him her bond for titles, which Hansel still has in his possession, put him in possession of the land, and that he held the whole of it as her tenant until the latter part of 1882, when he let his son, Albertus, without her consent, into the possession of the dwelling house; that Albertus is colluding with complainants, is holding for them, and seeks

to deprive her of her right to the land. She says Hansel has never paid her for the land, and has never repudiated the contract, and that the bond for titles made by complainants was made after she had given ·Hansel her bond, and while he was in possession under her. She denies the possession of complainants, and that they have any perscriptive title to the land. She admits her insolvency, unless she is the owner of the land. The bill of exceptions comes here under a pauper affidavit. The defendant did not produce any deed to herself, because she says she was unable to find it, and that she gave it to Hansel Beckwith with the other back deeds to the land, which complainants have, and which she claims as her papers, to be used on the hearing of a bill filed by him against Samuel H. Hawkins.

The complainants produced on the hearing the three back deeds referred to, made in 1868, conveying the land to Aaron T. and Isaac Hart, and also a deed from I. N, Hart to Allen Fort, conveying his interest or claim in the land, made in 1875, and Fort's quit-claim deed to them. These deeds are not very material to the questions involved. The complainants rely upon the following as their paper title, to-wit : A mortgage, dated May 9th, 1870, from I. N. Hart, Samuel G. Hart, Aaron T. Hart, and D. F. Hart, partners, composing the· firm of I. .N. Hart & Company, to Ketchum & Hartridge, on the lands in controversy (and on some personal property), given to secure their two promissory notes for two thousand dollars, due October 1st and November 1st, 1870, payable to the order of Isaac Hart and indorsed by him. A mortgage *fi. fa* , based on this mortgage, from Sumter superior court, issued December 1st, 1875, for $1,737.75, in favor of Robert M. Jourdan and Lewis ·G. Young, assignees in bankruptcy ·of Ketchum & Hartridge, against the lands as the property of I. N. Hart & Company. The names of the members of the firm are not stated in this *fi. fa.* It was assigned by the plaintiffs' attorney, on the 2d of December, 1875, to

v 72-54

the complainants, and levied on the lands on the following day, and the lands sold to the complainants. A deed from A. W. Wheeler, sheriff, dated February 1st, 1876, made in pursuance of said sale, in consideration of $1,800.-00 to the complainants.

The firm names set forth in this deed are Thomas Harrold, Henry R. Johnson and Uriah B. Harrold.

A bond for titles from complainants to Hansel Beck· with, dated March 10th, 1876, binding them to make a quit-claim title to Beckwith on the payment of his notes for $2,600.00 given for the land. This bond and sale was cancelled on the 5th of March, 1882, no part of the notes having been paid, the papers returned to the respective parties, and an entry on the bond recites that possession of the land was surrendered to complainants.

A deed from Eldora V. Cottle to Henry Johnson, who, we are informed, is Henry R. Johnson, of complainants' firm, dated June 10th, 1875, conveying the land in controversy to him. The complainants claim title under these papers and exclusive possession from the 10th of February, 1876, up to the 8th day of December, 1883, when the defendants took possession of the out-house, and say they are still in possession by Albertus L. Beckwith, their tenant.

One of the leading features of the controversy is the possession of Hansel Beckwith. Both parties claim him as their tenant. The complainants show that Eldora V. Cottle brought her action of complaint for the land, in May, 1883, against them and both the Beckwiths, and to recover mesne profits from the first day of January, 1877. Hansel Beckwith swears that he was present at the sale of the land under the Ketchum & Hartridge mortgage *fi. fa.*, made on the first Tuesday in February, 1876; that the complainants bought it, and that the sheriff then put them in possession; that Eldora V. Cottle knew it, made no objection to it, and that Aaron T. Hart, one of the defendants in the *fi. fa.*, and who was understood to be the

real owner, consented thereto ; that on the 10th of March,. 1876, he bought the land from the complainants with the knowledge of Eldora V. Cottle and the consent of Aaron T. Hart, and went into immediate possession thereof; and he and Albertus Beckwith both swear that he held possession until the 5th day of March, 1882, when, being unable to make payment, his contract was rescinded and he surrendered his bond for titles with possession of the land to complainants ; that John H. Walker, as agent of complainants, then took charge of it, and put Albertus Beckwith in possession as their tenant.

On the other hand, defendants say by their answers,. their affidavits and those of Aaron T. and I. N. Hart, that. the land was conveyed to Aaron and Isaac Hart by Harvey, executor of Brown; that they went into possession and conveyed it to Eldora V. Cottle on the 8th of October,. 1871 ; that she then took possession of it and resided on it, and that in 1873 she sold it to Hansel Beckwith for· 160 bales of cotton, to be delivered, and gave him her· bond for titles to convey to him when he should pay the purchase money, and that he took possession under his. purchase from her, and held under her until he let Albertus Beckwith into the possession of the dwelling house as. complainants' tenant in 1882; that Hansel Beckwith swore in a bill filed by him in 1874 against Samuel H. Hawkins and I. N. Hart & Co., a copy of which is in the· bill of exceptions; that he went into possession as her· tenant; that he offered to surrender to Eldora V. Cottle a few days before the bill in this case was filed; that she· entered on the land peaceably, and went into the house in the oat-field with his permission, and they deny that they· knew Hansel Beckwith claimed to be complainants' tenant, that he was ever dispossessed by the sheriff, and that, complainants are in possession of the land.

Complainants claim that Eldora V. Cottle is the sister-- in-law of Aaron T. Hart ; that the deed to her is without; consideration, made to shield him from his creditors, and·

is therefore void, and that her sale to Hansel Beckwith was a part of this scheme; that Aaron T. Hart is the real party at interest in this and two other equity cases, copies of which are embraced as evidence in the bill of exceptions; and in support of this claim they refer to the sworn copy bills and answers, wherein it is alleged that though the land was conveyed by Harvey, executor to Aaron and Isaac Hart, the firm of I. N. Hart & Co. paid for it, and that it belonged to the firm; and that, in December, 1870, when this firm was dissolved, on a settlement with Aaron Hart, he then agreed to take the land and personal property thereon at $12,000 00, pay himself a note which he claimed the firm owed him of $2,420.00 and two other debts of the firm,—this one to Ketchum & Hartridge of about $4,000.00, and one to Wilson & Co. or Wilson & Wilkins of about $4,000.00; that he has transferred the note of the firm, of $2,420.00, payable to himself, to O. J. Cottle, without consideration, and that Cottle is seeking to enforce it against the firm; that he has only paid $2,000.00 on the debt due Ketchum & Hartridge, and $900.00 on that due Wilson & Co.; refused to pay the balance of these debts, and conveyed the land to Eldora V. Cottle, that she might claim it for him against these creditors. And complainants show by Hansel Beckwith that Aaron Hart delivered Eldora V. Cottle's bond for titles to him, and that she was not known in the transaction by Joseph McMath; that Aaron Hart told him he intended to convey the land to Eldora V. Cottle to avoid the payment of his debts; and by Wiggins, Wade, Jordan, Fletcher, Tiner, Allen, Joseph Hart, T. M. and William Pilcher, that the land was known as Aaron Hart's, and that he was in possession thereof, claiming and using it as his own until 1874, long after the sale to Eldora V. Cottle, and that she took no part in the control or management thereof.

On the contrary, Eldora V. Cottle says Hansel Beckwith, in the bill filed by him before referred to, made oath that the only debt assumed by Aaron, on the dissolution of the

firm, was that in favor of Ketchum & Hartridge. A copy paper, following the bill in the evidence, dated November 21st, 1872, having the names of I. N. and Isaac Hart signed thereto, purports to release Aaron Hart from all firm debts, except that above named, and to give to him their interest in the farm. The defendant, Eldora V. Cottle, also says that, to the best of her knowledge and belief, she did not make the deed to Henry Johnson; that she has no recollection of it, and therefore she believes it to be a forgery. The two subscribing witnesses to its execution, Thos. B. Lumpkin, clerk of the superior court, and Wm. B. Butt, both swear to their signatures, and Lumpkin says, to the best of his recollection, he saw her sign it, and Butt swears positively he did see her sign it.

The evidence shows that the defendants went into the house in the oat-field in the night; that they were disturbing the tenants, and interfering with the cultivation of the farm.

It being represented to Judge Roney that Judge Fort was disqualified, he granted, in December last, a temporary restraining order and rule to show cause before the judge presiding at the following term of Sumter superior court. Judge Clarke was there then, and heard the case, and enjoined the defendants from doing anything to interfere with the full and free occupation of the houses and lands. in possession of complainants' tenants, with the cultivation of the land, and from destroying timber or wood thereon, leaving defendants in possession of the house occupied by them, and allowing them ingress and egress to and from the same.

1. Exception is taken here to the jurisdiction of Judge Clarke, of the Pataula circuit, because Judge Fort, of the Southwestern circuit, was in the county where the order *nisi* was granted by Judge Roney, and where the hearing took place, and because it did not affirmatively appear that Judge Fort was disqualified. But Judge Clarke certifies that, though his attention was called to this matter after the evidence was closed, and pending the opening

argument, he did not understand that the question was submitted, but understood that the hearing of the case by him was acquiesced in by counsel. The question not having been decided by the court below. is not the subject-matter of review her. This case differs from *Sharman vs. The Town Council of Thomaston*, 67 *Ga.*, 246, in that the record and bill of exceptions together show that Judge Fort was disqualified.

2. The object of the bill was not to remove the defendants from the house, but to restrain threatened trespasses by insolvents, very damaging in their character, to the enjoyment and use of the property, the rental value of which is alleged to be $1,000.00 per annum, and therefore neither a warrant for forcible entry and detainer, nor to eject an intruder, on account of the delay incident thereto, would have reached the case.

Equity will restrain a trespass when the threatened injury is irreparable in damages, or when the trespasser is insolvent, or when there exist other circumstances, which, in the discretion of the court, render the interposition of the writ necessary and proper, among which shall be the avoidance of circuity and multiplicity of actions. Code, §3219; *Graham vs. Dahlonega Gold Mining Co.*, 71 *Ga.*, 296.

3, 4. It is also said that complainants had no possession of the land, and that the court erred in holding that the tenant of the defendant might, after a sheriff's sale, which took away his landlord's title, and under which he might be ejected, attorn to complainants, without first abdicating the premises, abandoning his prior possession and severing his relation with his prior landlord.

· The defendant claims title under a deed made by Aaron T. and Isaac Hart on the 8th of October, 1871. The mortgage was made on the 9th of May, 1870. It was signed by I. N. Hart, Samuel G. Hart, Aaron T. Hart and Daniel F. Hart, styling themselves partners, composing the firm of I. N. Hart & Co. Isaac Hart, then a resident of Schley

county, now deceased, indorsed the notes secured by the mortgage, but did not sign the mortgage. He was a member of the firm at its beginning in 1867, and seems to have remained a member thereof until it was dissolved on 15th of December, 1870.

There is evidence that the land was bought for the firm, paid for with the money of the firm, and the title conveyed to Aaron and Isaac for the firm. If this is true, then the law implies a trust in favor of the firm, for " whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase money or other circumstances, is either wholly or partially in another," a trust is implied. Code, §2316 ; 54 *Ga.*, 690.

If this state of facts existed, then the members of the firm were the equitable owners and tenants in common, and could mortgage the land. *Pitts vs. Bullard*, 3 *Ga.*, 5, 16 ; *Field vs. Jones*, 10 *Ga.*, 229 : Neligh *vs.* Michenon, 11 N. J. Eq., 539 ; Sinclair *vs.* Armitage, 12 N. J. Eq., 174.

Four of the five partners did mortgage it. The mortgage was foreclosed, the land sold, and bought by the complainants, and if the proceedings were all regular, the sale operated to convey the interest of all the partners therein who joined in the mortgage. *Printup Bros. vs. Turner*, 65 *Ga.*, 71.

The lien of the mortgage antedated the deed to Eldora V. Cottle. The mortgage *fi. fa.* issued against the firm of I. N. Hart & Co. It does not set forth any of the firm names, except that of I. N. Hart, who was the successor of the firm when it was dissolved. This sale did not pass the title to the interest of Isaac Hart in the land, because he did not join in the mortgage. Whether it passed the title of all the other members of the firm as against a subsequent *bona fide* purchaser, it is not now necessary to decide. The sheriff's deed, made in pursuance of the sale, was at least good as color of title.

Hansel Beckwith says the sheriff put the complainants in possession of the land in February, 1876, with the

knowledge of Eldora, who made no objection thereto, and with the consent of Aaron T. Hart, who was understood to be the owner of the land. If, after the land was sold and purchased by the complainants under the *fi. fa.* against I. N. Hart & Co., the sheriff came to put the purchasers in possession of the entire and undivided interest therein, and Hansel Beckwith agreed to surrender to him, and to hold possession for the complainants, we can see no legal objection thereto, especially if there was no objection on the part of adverse claimants to the land, or if the change of possession was made with notice to them. See *Beall vs. Davenport,* 48 *Ga.,* 165.

5. There was a common law *fi. fa.* introduced in evidence in favor of Ketchum & Hartridge against I. N. Hart & Co , Isaac Hart appearing as one of the defendants therein, issued in 1875, on the same debt, and levied on the land in November of that year, but as no sale was made under it, we do not see how it affects the title to the land.

6. If Aaron T. Hart took the land from the firm when it was dissolved, and agreed to pay the Ketchum & Hartridge debt, and failed and refused to do so, and conveyed the land to Eldora without consideration, to shield himself from the payment of this and other debts assumed by him, and she gave her bond to Hansel Beckwith for this purpose, and it was so received by him, these conveyances would be void.

7. Though Isaac Hart did not join in the mortgage, yet the mortgage purports to be that of I. N. Hart & Co. The *fi. fa.* issued against the firm, and the land was sold and conveyed as the property of the firm. The complainants claim a prescriptive title to the land.

Eldora claims to be a *bona fide* purchaser for value, and denies the possession of complainants.

It was right for the chancellor to quiet the possession of the land by injunction, until all these questions could be

determined by the jury. *Daniels vs. Edwards et al.*, 72 *Ga.*, 196.

8. The sale of the land under the Armstrong *fi. fa.*, which issued from a judgment obtained on the Wilson & Co. debt, and which debt had been assigned to him, did not convey more than the equity of redemption therein. The mortgage was a prior lien thereon, and we are not advised of any irregularity in relation to it.

9. We do not see how the deed of Eldora V. Cottle to Henry Johnson, one of the complainants, could be in the way of an injunction in this case. The complainants were all suing for the use of the firm, and title might be shown in them or either of them.

If the deed is her deed, it concludes her. If it is not her deed, of course it cannot affect her rights.

10. On the hearing of this case, a motion was made to dismiss the bill of exceptions, on account of interlineations and erasures therein In addition to what has been heretofore said on this subject, in *Masland; Jr., vs. Kemp et al.*, 72 *Ga.*, 182, we will add that frequently bills of exceptions, which need correction by the judge, are sent to him in a distant part of the circuit, too late, after correction, to be returned and copied in time. The judge may always correct the bill of exceptions in the body thereof, so as to make it conform to the truth, if he chooses to do so. It would be better for the judge, whenever he corrects the bill of exceptions, not to interline it, but to make his corrections on the margin, or on a separate piece of paper, and attach it before certifying. No alteration by the judge, certified to have been made by him, will cause a dismissal of the case. Nor will an immaterial erasure or interlineation made by counsel. Material interlineations, additions or erasures, not made by the judge, or certified to have been made before the bill of exceptions was certified, will authorize this court to dismiss the case. It is the duty of counsel to present a clear, well written and orderly bill of exceptions to the judge, whenever he desires

to bring a case here; and it is the duty of the circuit judges to see that this is done. This court would not grant a *mandamus* absolute against a judge who refuses to certify an illegible, disorderly, erased or interlined bill of exceptions. See *McCall vs. Walter*, 71 *Ga.*, 287, and authorities there cited, and *Anderson vs. Walker & English*, this term.

In this case, we have had great trouble to collect the facts on account of the want of system in attaching the papers together, duplicate copy papers in the bill and record also, illegible writing, omitted words and sentences in the record, which we presume the clerk could not read, and therefore could not copy, and the injection of a number of papers into the record, on a motion to attach the defendants for a violation of the injunction, and which do not appertain to this case. But for the suggestion of this court on the hearing, that the rule would be more clearly defined in this case, this bill of exceptions would have been dismissed.

The abstracts furnished in this case were very meagre and unsatisfactory. It would be a great relief to the court, if counsel for both parties would conform fully to the rule on this subject.

Let the judgment of the court below be affirmed.